HEARD NOVEMBER TERM, 1877.

## MOORE vs. BYRUM.

A contract in writing, dated in December, by which a debtor, in consideration of indulgence, gave to his creditor "a mortgage on all my [his] cotton, corn and wheat that I may raise during the then next years, to secure the payment of the debt; and in default of payment by the 1st of November next, then I authorize the said " creditor or his agent to "take all the crops raised by me :" *Held*, As between the parties, to be a good and enforcible lien upon the crops mentioned therein, although they had not been planted when the contract was made.

Though a mortgage on property to be subsequently acquired may not be valid or effectual at the time it is given, yet, if the mortgagee takes the property into his possession after it is acquired and before the rights of others as creditors or purchasers have attached thereon, the right to the mortgaged property passes from the mortgagor to the mortgagee.

Where a debtor, in consideration of indulgence, gives to his creditor a mortgage on crops to be afterwards raised, and the mortgagee gets possession of the crops under the contract, the mortgagor is estopped from disputing his right.

Such possession may be acquired under a warrant issued by the Clerk under the Act in relation to agricultural liens.

## BEFORE REED, J., AT ANDERSON, MAY, 1877.

This was an action by C. A. Moore against Joseph N. Byrum and Wm. McGukin, Sheriff, to recover the possession of personal property.

The case is fully stated in the judgment of the Court.

*Harrison*, for appellant:

I. A crop yet to be planted is the subject of a valid mortgage.—
1 Hill. Mort., 4; 17 John., 283; 7 How., 250; 19 Wall., 544;
*Wyatt* vs. *Watkins*, Law and Equity Reporter, (Tenn.,) 240.

II. That the defendant is estopped from denying his own deed.—
8 Wend., 480; 2 Bail., 269.

The Court will perceive that the small amount of money involved in this case would scarcely warrant an appeal from the order of the Court below; yet the principle as to validity of a mortgage of a crop not yet in the ground is novel in the Courts of this State, and from the repeal of the lien law becomes of great importance to the agricultural and commercial interests of the people of the State—hence a reason for this appeal; for in the advancement of the times, and the Legislature of the State having, from necessity, enacted a lien law and lately having repealed the operation of the same, it becomes the judiciary of the State, upon a proper case made, to decide whether such a mortgage, duly executed and recorded, is valid and binding upon the parties to it.

In *Shumate* vs. *Taylor*, (7 How., 251,) it is decided that where an individual, by agreement with the owner of land, has an interest in a fallow thereon, for the purpose of raising a crop of wheat, where each is to have one-half, he can by a chattel mortgage bind his interest in the use of the land and in the wheat which is afterwards put in under the agreement.

In *Cooper* vs. *Douglas*, (44 Barb., 409,) it is said the theory upon which future earnings or the result of future labor are sometimes allowed to be anticipated and appropriated to the payment or security of a present indebtedness is that they are connected with a contract or employment already in existence, or are the fruits of advances made or supplies furnished to carry on the business out of which the future property or earnings arise, and then the pledge attaches to this property or the earnings, not from the moment of the contract, but from the moment they spring into existence.

In *Butt* vs. *Ellet* (19 Wall., 544,) the principle decided was: Although an instrument which purports to mortgage a crop, the seed of which has not yet been sown, cannot at the time operate as a mortgage of the crop, yet when the seed of the crop intended to be mortgaged has been sown and the crop grows a lien attaches. Mr. Justice Swayne delivered the opinion of the Court. In referring to the mortgage, he says: " The mortgage clause in the contract of lease of the 15th of January, 1867, executed by Sillers and Graham, could not operate as a mortgage, because the crops to which it relates were not then in existence. When the crops grew the lien attached and bound them effectually from that time," etc.

A still later case, embodying the authorities in favor of and against this doctrine, is *Wyatt* vs. *Watkins*, from the Supreme Court of the State of Tennessee, reported in the 29th August number, 1877, of the Law and Equity Reporter, page 240. The principle extracted is: "A crop yet to be planted is the subject of a valid mortgage."

The facts of the case now before this Court, briefly stated, are : Moore, the appellee, was the tenant of Byrum, the appellant, for the year 1875. At the close of the year he fell in debt to Byrum for his share of guano furnished for the crop of 1875. His share of the corn made on the place was still on the place and in possession of Byrum. Byrum refused to let him remove the corn unless he would secure his debt; and in consideration of the debt and getting possession of the corn, Moore executed the note and mortgage. At

the date of the mortgage Moore had rented lands of one McCully and had removed his family to such place. · It was not claimed that the mortgage was a statutory lien, although the Clerk of the Court had treated it as such and irregularly issued his warrant. But when the officer seized the crop the two papers were attached together, and it is claimed that the seizure would be referred to the legal paper. Although this debt was not, *eo nomine,* for an advance to enable appellee to make the crop of 1876, yet substantially it was so, for he could not have made his crop without the corn; and certainly the appellee treated it as an advance, as the mortgage shows, and cannot now repudiate the transaction.

Now, is a chattel mortgage of a crop not yet planted only valid as between landlord and tenant—lessor and lessee? Is it a remedy which attaches to land, and not to the labor of individuals? If so, then its operation will be very restricted, and certainly would be an anomaly as to rights and remedies.

The authorities cited in *Wyatt* vs. *Watkins,* (August 29th number of Law and Equity Reporter,) from the Supreme Court of Tennessee, are very numerous, and, so far as examined, fully support the decision. The doctrine seems first to be found in 1st Hobart, 132;· 1 Powel on Contracts, 157–8, acknowledged and recited very fully in *Andrew* vs. *Newcomb,* 32 N. Y., 417; 18 Pick., 168; 14 Pick., 497.

The second proposition, that the appellee is estopped by his act and deed, would seem not to admit of controversy. He has certainly conveyed his crop to be grown in 1876 to the appellant, and under his hand and seal authorized its seizure. This surely is good as between the parties. He has by his conduct reaped an advantage, and the appellant suffered a loss, if the appellee succeeds in repudiating the transaction, which should never be permitted by Courts of justice.

*Murray & Murray,* contra:

A brief statement of the facts in this case is necessary for the proper consideration of the legal questions presented for the consideration of the Court. The respondent, C. A. Moore, cultivated land of the appellant, J. N. Byrum, in the year 1875, giving as rent a portion of the crops produced. In December, 1875, C. A. Moore paid to Byrum the part of all the crops going to him, retaining his part of the crops. Upon a settlement between them, Moore

fell in debt to Byrum in the sum of thirty-two 50-100 dollars, included in which sum was a debt Moore owed to McGrath & Byrum, the latter member of the firm being a brother of the appellant. Byrum refused to permit Moore to move the part of the crop going to Moore unless he would execute the note and contract contained in the first and second folios of the brief. Under these circumstances Moore executed the said contract. In the year 1876 Moore removed from Byrum's and cultivated the lands of another person. At the time said contract was made no part of the crop of 1876 was planted, nor was any part of this crop raised on any of the lands of Byrum. In November, 1876, Byrum made oath before the Clerk of the Court of Common Pleas that said written agreement was intended to be a lien under the statute, and the Clerk issued his warrant of seizure to the Sheriff of Anderson County, under the Act entitled "An Act to secure advances for agricultural purposes." Under this warrant the Sheriff seized the crops of Moore made in 1876, and Moore filed in the Trial Justice's Court a complaint for the delivery of personal property. The jury rendered a verdict for Moore for the property claimed. Byrum appealed to the Circuit Court, and it dismissed the appeal with costs, and thereupon Byrum appealed to this Court.

The facts in this case are not contested, and we will proceed to consider the several legal grounds upon which the decision of this case must depend. We maintain—

I. That the contract executed by C. A. Moore to Byrum could not operate as a statutory lien on the crops of Moore to be produced, because it was given to secure the payment of a debt already existing, and not for advances, either in money or supplies, for the production of the crop.— See Section 55, Chap. CXX, Gen. Stat., 557; *Dunn* vs. *Spears*, 5 S. C., 17. It is not necessary to argue this position, as the appellant, seeing the hopelessness of his case, abandoned the contract on the trial as a statutory lien and seeks to establish it as a chattel mortgage at common law.

II. That the appellant having regarded the contract as constituting a statutory lien, and having seized the property under said statute, could not upon the trial of the cause abandon his case under the statute and seek to establish it under a mortgage at common law.—2 Sick., (47 N. Y.,) 430.

Having thus seen that the said contract could not operate as a statutory lien to bind the crops of 1876, we proceed to show that it cannot be established as a mortgage at common law. We maintain

III. That the said contract is invalid as a mortgage, wanting words of conveyance or transfer which are essential to a mortgage.—*Green* vs. *Jacobs*, 5 S. C., 283. By reference to the contract it will be seen that there is no mortgage, no words of transfer of property, but only "I, C. A. Moore, do hereby give to Joseph Byrum, Jr., a mortgage on all my corn, cotton and wheat." The only word of transfer, " give," refers to mortgage and not to property. A mortgage is an instrument of writing containing covenants and conditions, and the whole force and effect of mortgage depend on the covenants and conditions. The covenants and conditions make the mortgage, and the simple term mortgage cannot make the covenants and conditions. The paper here presented is wanting in the essentials of a valid mortgage. The term " mortgage" is the name of an instrument, and not the instrument. Here we have the name, but the words necessary to constitute the instrument known by that name are wanting. In the case of *Green* vs. *Jacobs*, above cited, an instrument of writing purporting to be a lien on the maker's crops of cotton, corn, &c., to be made that year, to secure advances that day made, was given, and at the bottom of the instrument contained these words : "I, Frank James, consider the above instrument of writing a mortgage of all my personal property, such as wagons, horses, cattle," &c. It was duly recorded. This Court held in that case that the instrument was not a mortgage—that it was a mere declaration of what the instrument was to be considered in the place of the instrument itself. The present case is analogous to that, in this, that the party does not make the instrument, but declares that he hereby gives a mortgage.

But it may be said that in this contract a power to seize the crop is given in default of payment, and that under this power the appellant can hold the property seized. It is a clear principle of law that if a deed is invalid all the covenants and powers dependent on the interests conveyed by the deed are also void. If this instrument conveyed or transferred no property, then there was no property for subsequent covenants to effect.—See Vol. I of Law Library, p. 573, where it is said: " Whenever a deed is void all the covenants dependent on the interest professed to be conveyed by the deed are also void ; for, if no estate passes by the deed, the covenants relating to and dependent on the estate purported to be passed must necessarily fail to take effect."

IV. That the contract cannot be supported as a chattel mortgage, valid at common law, because the crops were not *in esse* when the contract was made.—2 Hilliard on Mortgages, Chap. XLIII, §§ 2, 17, 18, 19, 20, 21; 55 Ga., 543; 3 Law and Equity Reporter, No. 17, p. 541, April 25, 1877; *Dunn* vs. *Spears*, 5 S. C., 17; 1 Wait's Dig., p. 302, § 25; 17 John., 283; 7 How., 250; 19 Wall., 544; *Wyatt* vs. *Watkins*, Law and Equity Reporter, (Tenn.,) 240.

The question is not as to the validity of a mortgage given on a growing crop, as made by appellant in his grounds of appeal from Trial Justice's Court, but of a crop not planted, *and not connected with the land on which it is raised.* The doctrine laid down in Hilliard, and to which we think all the decided cases may be referred, is that only property in existence, or a possibility founded or coupled with an interest on property in existence, can be the subject of a valid mortgage, and equitable liens will be recognized in equity only where the property is in existence at the time, out of which the future possibilities may arise.—Hilliard on Mortgages, Chap. XLIII, § 17. As in the cases of a mortgage on sheep and the wool that may grow on them and the rent of land with a lien on the crops to be produced *on the land rented to secure the payment of rent.* The latest decision on the exact case presented, that a sale or mortgage of a crop *not planted* is invalid, was made by the Supreme Court of Georgia in February, 1877, in the case of *Redd et al.* vs. *Burrus et al.*, (Law and Equity Reporter, April 25, 1877, p. 541,) in which the Court said: "It is clear that Redd & Co. acquired no title by the obligation made in 1874 to deliver them cotton out of a crop made in 1875. The law is well established that there can be no sale or mortgage of a crop until it is planted. In December, 1874, the cotton crop which matured in the Fall of 1875 was not planted, and there could be no sale of any part of it." This decides the precise question presented in this case, as it is admitted that at the time the pretended mortgage was given the crop seized was not planted nor coupled with any interest out of which the crop was produced.

A review of the cases presented and relied upon by the appellant and above cited, when analyzed and traced to the principles upon which they were made, sustain the positions assumed by respondent and show that the instrument claimed as a chattel mortgage cannot be established as such. In *Hartwell* vs. *Bissell* (17 John., 128,) the question raised was between Hartwell, who levied a warrant for

taxes against L. B. on rye in the sheaf, and Bissell, who had previously levied his *fi. fa.* on the rye while growing in the field. The Court held that the *fi. fa.* took the crop. The question decided by that case was not one of mortgage, but of execution, and not one of a *crop not planted*, but of a *growing crop*, and decides nothing pertinent to the case now before the Court. In *Shuart* vs. *Taylor*, (7 How., 250,) another case cited by the appellant, the facts are: Cogswell made a note to Clark and executed a mortgage of all the right, title and interest of his " in and to about thirty acres of fallow or wheat on the farm of Ezra Taylor. Taylor sold his farm, reserving to Cogswell the right to sow the thirty acres on which the wheat was raised, with wheat on shares, his share being one-half." The Court, in rendering judgment, says: "It is clear that Cogswell at the time of giving the mortgage had a right to the use of thirty acres for the purpose of raising a crop of wheat and having one-half. Having such an interest, I see no good reason why the mortgage did not upon its execution become a lien upon it. The Referee has found that a part of the wheat was then sown; but however that fact may be, as the mortgage was upon the interest of Cogswell in the 'fallow,' I am of the opinion it bound his right to the use of the land and the wheat which was raised in the exercise of it. This is not the case of a mortgage of property which the mortgagor did not own at the time, but one of a mortgage upon an interest in property which then belonged to the mortgagor." This was certainly not the case of the mortgage of property not in existence, but of an interest in property then existing, coupled with future possibilities of interest. This is consistent with the rule laid down in Hilliard, and strongly intimates that the Court would not sustain as a mortgage an instrument which conveys or pledges property not in existence. The case of *Butt* vs. *Ellet* (reported in 19 Wall., 544,) is a further illustration of the principle already stated. The facts in this case are, that Sillers *leased* a plantation for one year to Graham for a certain moneyed rent, Graham giving his note for it; and, to secure the payment of the note *embodied in the lease* by which the plantation was let, Graham inserted in the lease a mortgage clause of all the crops raised on the plantation for the year. In that case the Court held, Justice Swayne delivering the opinion, that the mortgage clause in the lease *could not operate as a mortgage*, because the crops to which it related were not then in existence, but that when the crops grew

the lien attached and bound them. The Court in that case announced its decision without giving its reason. The principle upon which it was founded was evidently that of a *present interest* in the land on which the crops were produced, and although a mortgage could not be sustained, because the crops were not planted, yet an equitable lien attached, as the lease gave to the lessee present rights to the land, coupled with future possibilities of interest growing out of those rights. The case of *Wyatt* vs. *Watkins* (Law and Equity Reporter, Vol. IV, No. 9,) is a decision of the Supreme Court of Tennessee as to a deed of trust under the usages of conveyance in that State, and not of a mortgage at common law, and yet consistent with the principles already cited, being a conveyance to a trustee for certain uses of a piece of land with the crops thereon, and which is not similar to the case now submitted to the Court.

V. There remains only one other question submitted by appellant for decision, and that is: Is the respondent estopped from denying the validity of the instrument as a mortgage? The case of *Green* vs. *Jacobs*, before cited, is one directly in point. In that case, analogous to the one before the Court, the instrument was held invalid as a mortgage. Every estoppel must be reciprocal and binding on both parties.—Viner's Abr., title Estoppel, 463. In the case before the Court the contract made by the respondent was to secure the payment of a pre-existing debt; the appellant yielded no right nor gave any consideration for the contract other than that of the pre-existing debt, and we know of no principle of law or equity which estops him from denying the validity of the instrument as a mortgage, and especially when the appellant has sworn that the instrument was intended to be a lien under the statute.

January 20, 1879. The opinion of the Court was delivered by

McIVER, A. J. This was an action brought in a Trial Justice's Court to recover the possession of certain personal property. The Trial Justice rendered judgment for the plaintiff, and upon appeal to the Circuit Court his judgment was sustained by that Court.

The facts of the case, as we learn them from the statement made by the respondent and conceded by the appellant, were as follows:

Moore cultivated land of Byrum in the year 1875, and at the end of the year, having fallen in debt to him, Byrum refused to permit Moore to remove the portion of the crop to which he was

entitled unless he would secure his debt by executing the note and agreement hereinafter mentioned, whereupon Moore, on the 4th of December, 1875, executed his note under seal, whereby he promised to pay the defendant, Byrum, on or before the 1st of November next after the date of said note, thirty-two 50 100 dollars, and, to secure the payment of such note, executed a paper of which the following is a copy:

"*Know all men by these presents*, That I, C. A. Moore, * * * do hereby give to Joseph Byrum, Jr., a mortgage on all my cotton, corn and wheat that I may raise during the year 1876, to secure the payment of the above note this day given by me; and in default of payment by the 1st of November next, then I authorize the said Byrum to take all the crops raised by me, or any other person he may select so to do."

The crops mentioned in the foregoing paper were not planted at the time the same was given and were not raised on lands of the appellant. The note not having been paid at maturity, the defendant, Byrum, obtained from the Clerk of the Court of Common Pleas a warrant, under the provisions of the Act entitled "An Act to secure advances for agricultural purposes," directed to the defendant, McGukin, as Sheriff, under which he seized the cotton and other crops of the plaintiff; whereupon this action was commenced to recover possession of the same. At the trial, the defendants abandoned any claim to hold the property under the warrant issued by the Clerk, for the reason, as it would seem from the report of the Trial Justice, that the debt intended to be secured was an antecedent debt and did not arise from advances made at the time or after the execution of the agreement, but claimed that the agreement, although not effectual as an agricultural lien under the statute, was good as a mortgage, and that the taking of the property was justified under the provisions of such paper as a mortgage.

The Trial Justice instructed the jury before whom the case was tried " that a mortgage on personal property not in being was invalid as a mortgage, and that if they believed from the testimony that the crop was not planted at the time of the agreement, that then it was wholly invalid as a mortgage;" and, further, " that no evidence had been produced the legal effect of which was to estop the plaintiff."

To all these rulings the defendant excepted. The grounds upon which the Circuit Judge rested his decision are not stated, as he

simply dismisses the appeal and renders judgment for the plaintiff; from which we must infer that he adopted the rulings of the Trial Justice, and for this reason we have stated them. It would seem, therefore, that the agreement was regarded both by the Circuit Judge and by the Trial Justice as intended by the parties as a mortgage, though the defendants did at one time treat it as if it were also an agricultural lien under the statute. There can be no doubt that a paper, whatever may be its form, will, if intended by the parties as a mortgage, be so regarded by a Court of Equity, ( *Walling* vs. *Akin*, McM. Eq., 1,) and we have as little doubt that the parties in this case did intend the paper here in question to be a mortgage, as it is so distinctly called in the body of the paper, and contains a provision, usually found in mortgages of personal property, authorizing the mortgagee, either by himself or by his agent, to seize the property mortgaged upon default in payment of the mortgage debt. The fact that Byrum at one time seemed to regard it as a lien under the statute does not negative this idea, for we know it is frequently the case that papers of this kind are so drawn as to give them both characters. Nor do we think that this can be controlled by the decision in the case of *Green* vs. *Jacobs*, (5 S. C., 280,) for two reasons: First. Because that was a case in which the rights of third persons had intervened, while in this case the contest is between the original parties. Second. Because in that case there was no provision in the paper authorizing the mortgagee to take possession of the property mortgaged upon default in payment of the debt, while in this case there is such a provision.

This, it will be remembered, is an action to recover possession of personal property; it is not an action to recover damages for a trespass in unlawfully seizing property in the possession of the plaintiff. But the action, if maintainable at all, must be maintained upon the ground that the property in question belongs to the plaintiff, or that, as against the defendants, he is entitled to the possession of it. If, therefore, the paper under which the defendants seek to protect themselves can be regarded as having the effect of a mortgage, then, clearly, the plaintiff cannot maintain this action. It is argued, however, that this paper cannot be regarded as a mortgage because at the time it was executed the property intended to be mortgaged had neither an actual or a potential existence, inasmuch as it is admitted that the crops had not then been planted and were not afterwards raised on land of appellant which he then

held either in his own right or as tenant of another. The authorities cited in respondent's brief do show that, in order to create a valid mortgage, the thing intended to be mortgaged must be at the time either in actual existence or it must be the prospective yield of something which has then an actual existence. But where there is a mortgage on property to be subsequently acquired, although the mortgage is not valid or effectual at the time when it is given, yet after the property is acquired and is taken into possession under the mortgage by the mortgagee the right to the property passes from the mortgagor to the mortgagee. Unquestionably is this so where, as in the case now under consideration, the rights of third persons, either as creditors or purchasers, have not intervened and where the controversy arises between the original parties. As is said in the case of *Moody* vs. *Wright*, (13 Metcf., 32,) "a stipulation that future-acquired property shall be holden as security for some present engagement is an executory agreement of such a character that the creditor with whom it is made may, under it, take the property into his possession when it comes into existence and is the subject of transfer by his debtor and hold it for his security; and whenever he does so take it into his possession, before alienation thereof, such creditor, under his executory agreement, may hold the same." So in the case of *McCraffrey* vs. *Woodin*, (65 N. Y., 459,) reported also in 22 Amer. Rep., 644, it was held that a provision in a lease which amounted to a chattel mortgage on after-acquired property, while it conveyed no present legal title, inasmuch as the property mentioned was not then in existence, was yet a valid license to enter and seize the property as soon as it was acquired or came into existence; and after such entry and seizure the title vested in the mortgagee even at law, and that in equity the lien would attach and bind the property as soon as it was acquired or came into existence, even before it was taken possession of by the mortgagee.

This doctrine was fully recognized in the case of *Williams* vs. *Briggs*, (11 R. I., 476,) although the controversy there was not between the original parties, but between the mortgagee and an assignee of the mortgagor. It is true that in this case the decision was in favor of the assignee of the mortgagor, but it was placed upon the ground that the action was brought at law and not in equity, and that the mortgagee had never taken possession of the property mortgaged. The mortgage was upon the tools, fixtures,

stock in trade for the manufacture of carriages, and all carriages made or in process of manufacture then in the carriage factory of the mortgagor, and also upon all stock, tools, fixtures and carriages, whether manufactured or in process of manufacture, "*that may be hereafter purchased by me* to be used in or about my business of buying and selling, making and repairing carriages." It appeared at the trial that only a small part of the property in controversy was in the possession or ownership of the mortgagor at the time of the making of the mortgage, the larger part of it having been subsequently acquired. Durfee, C. J., in delivering the opinion of the Court, says (the italics being ours): " The case, therefore, raises the question whether a mortgage of property to be subsequently acquired conveys to the mortgagee a title to such property when acquired which is valid at law as against the mortgagor or his voluntary assignee. * * * We think such a mortgage is ineffectual to transfer the *legal* title of the property subsequently acquired, *unless* when acquired possession thereof is given to the mortgagee or taken by him under the mortgage." This case is cited as presenting, together with that of *McCaffrey* vs. *Woodin*, (*supra*,) a very full collection of the authorities establishing the propositions herein announced. See, also, *Frazer & Co.* vs. *Hilliard*, (2 Strob, 309,) where it is said: " If one sells goods in which he has no property at the time of the sale, and subsequently acquires a title, the property, as soon as a title is acquired by the seller, will vest in the buyer."

We think, too, that the plaintiff is estopped from maintaining this action. In consideration of indulgence on a debt then due, the plaintiff, by the paper in question, executes to the defendant, Byrum, an agreement intended as a mortgage, by which he stipulates, if the debt is not paid at the expiration of the period of indulgence, that Byrum shall be authorized to take the crops to be raised by him into his possession; and although, as against third persons, such agreement might not be held to be a valid mortgage, for the reasons above indicated, and possibly might not be sufficient to authorize the bringing of an action by Byrum against Moore to recover possession of the property mentioned, after default in payment of the debt, (about which, however, we express no opinion,) yet certainly when, upon default in payment of the debt, the property has been taken possession of by Byrum or by his agent, the plaintiff cannot be allowed to recover it back; for to do so he must repudiate

his own agreement under which he obtained the desired indulgence. Having got what he wanted—indulgence—in consideration that Byrum should have authority to seize the property in question upon default in the payment of the debt, he is estopped from now denying such authority. The fact that the property was taken possession of under the warrant issued by the Clerk to enforce the supposed statutory lien, and not under the mortgage, *eo nomine*, cannot, in our opinion, make any difference. If Byrum had authority, as we have seen that he had, to take the property into his possession, it matters not how he acquired the possession so that he did not violate the criminal law.— *Wolfe* vs. *O'Ferrell*, 1 Tr. Con. Rep., 155. Where the Sheriff levies upon and sells property under an execution which confers no authority, yet if at the time he has in his office an execution which does give such authority his action will be referred to that which confers the authority. So here, while the warrant issued by the Clerk may not have been sufficient to authorize the seizure, yet the paper upon which it was issued and to which it was attached, regarded as a mortgage, was sufficient to authorize the seizure of the property, and under it the taking could be justified.

The judgment of the Circuit Court is set aside and a new trial ordered.

*Willard*, C. J., and *Haskell*, A. J., concurred.

---

HEARD NOVEMBER TERM, 1878.